THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Latosha Bartlett,

    Plaintiff,

    v.

              Case No. 1:22cv423

Village of Golf Manor, Ohio, *et al.*,        Judge Michael R. Barrett

    Defendants.

## OPINION & ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 10). Plaintiff filed a Response in Opposition (Doc. 17); and Defendants filed a Reply (Doc. 21).

## I.    BACKGROUND

This case arises out of the tragic shooting and killing of Aurora McCarter. At the time of her death, Aurora was seventeen years old and living in the Village of Golf Manor with her mother, Plaintiff Latosha Bartlett. Plaintiff brings claims as administrator of the estate of Aurora McCarter against the Village of Golf Manor, Golf Manor Police Officer Mackenzie Recker in his individual and official capacity.[1]

On July 7, 2020 Aurora went missing after she and her mother had an argument. (Doc. 9, Latosha Bartlett Dep., PAGEID 317-318). On the night of July 13, 2020, Bartlett went to the Golf Manor Police Department to file a missing person report. (Bartlett Dep., PAGEID 378-379). Bartlett spoke to Officer Recker who took the information from

---

[1] Plaintiff also brought claims again Calvester Coleman and John and Jane Does. The Doe defendants have not been identified and it is not clear from the state court record whether service was made upon Calvester Coleman. (Doc. 1-3).

Bartlett to file a missing person report.  (Doc. 8, Mackenzie Recker Dep., PAGEID 151, 254, 257).  Bartlett explained to Officer Recker that she believed Aurora was with her boyfriend, Christopher Coleman.  (Recker Dep., PAGEID 156).  Bartlett told Officer Recker that Coleman had been abusive towards Aurora in the past.  (Recker Dep., PAGEID 178).  Bartlett provided Officer Recker with Christopher Coleman's cell phone number.  (Bartlett Dep., PAGEID 411).  Officer Recker called and texted Coleman.  (Recker Dep., PAGEID 180).  Officer Recker ran a search of Christopher Coleman's license plate in a reader system which showed photos of his car taken by cameras in the local area.  (Recker Dep., PAGEID 157-58).  Officer Recker shared this information with Bartlett.  (Recker Dep., PAGEID 158).

Later that same night, information about Aurora—such as name, sex, race, date of birth, height, weight, eye color and hair color—was entered into the Law Enforcement Data System ("LEADS").  (Doc. 10-1, Hansford Aff., ¶¶ 9, 10).  LEADS is a computerized network which provides data and communications for criminal justice agencies within the State of Ohio. (Hansford Aff., ¶ 5).  Information in LEADS is automatically connected to the National Crime Information Center ("NCIC") database. (Hansford Aff., ¶ 12).  In addition, a message was sent to twenty-three other law enforcement agencies in Hamilton County, Butler County, Warren County, and Clermont County to notify them that Aurora was a missing juvenile.  (Hansford Aff., ¶ 13).  This message included a description of Aurora and a request to contact Golf Manor Police Department if she was located. (Hansford Aff., ¶ 13).

In early August, Aurora returned home, but only for a very brief period of time.  (Bartlett Dep., PAGEID 394-98).  Shortly thereafter, on August 13, 2020, Aurora was

shot and killed by Calvester Coleman. (Bartlett Dep., PAGEID 345).[2]

Defendants move for summary judgment on the claims brought against them: (1) wrongful death; (2) intentional infliction of emotional distress; (3) failure to train, supervise or discipline under 42 U.S.C. § 1983; (4) state created danger; and (5) punitive damages.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether this burden has been met by the movant, this Court views the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Section 1983

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) and *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir.

---

[2]The record is silent as to the relationship between Christopher and Calvester Coleman. The record also does not provide any additional details regarding Aurora's death.

1992)).

Defendants maintain that even if Plaintiff could establish a constitutional violation, Officer Recker is entitled to qualified immunity and Plaintiff has failed to demonstrate a basis for municipal liability.

### 1. Qualified immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id*. (quoting *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011); *see also Moderwell v. Cuyahoga County*, 997 F.3d 653, 659-660 (6th Cir. 2021). A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (quoting *Morrison v. Bd. of Trs. of Green Twp*., 583 F.3d 394, 400 (6th Cir. 2009)).

In response to Defendants' summary judgment motion, Plaintiff did not specify a particular constitutional right which has been violated.[3] Instead, Plaintiff explains that

---

[3]In her Complaint, Plaintiff does not articulate an Equal Protection claim, but references a general disparity between the handling of missing children cases based on race. (Doc. 2, PAGEID 46). However, these statements in the Complaint are not connected to the Village of

Officer Recker violated Ohio Revised Code § 2901.30 and Golf Manor Police Department Policy Manual Section 316.  (Doc. 17, PAGEID 635).  Ohio Revised Code § 2901.30 "identifies actions that police officers must take when confronted with reports of a missing child."  *State v. Sager*, 131 N.E.3d 335, 342 (Ohio Ct. App. 2019).  Similarly, Golf Manor Police Department Policy Manual Section 316 "provides guidance for handling missing persons investigations."  (Doc. 8-1, PAGEID 243).  Plaintiff maintains that Officer Recker failed to recognize that Aurora qualified as an "at risk" missing person under the Golf Manor policy and should have taken steps to locate Aurora beyond taking the missing person's report and running a license plate.[4]

A claim under Section 1983 cannot be based solely on violations of state law or state administrative policies.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Johnson v. ODRC*, No. 1:23-CV-39, 2023 WL 4084830, at *5 (S.D. Ohio June 20, 2023).  Instead, the "threshold requirement" of Section 1983 is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Lewellen v. Metro. Gov't of Nashville & Davidson Cnty., Tenn*., 34 F.3d 345, 347 (6th Cir. 1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979)).  Presumably, Plaintiff's claim is based on language in the Fourteenth Amendment that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law."  U.S. Const.

---

Golf Manor or Officer Recker specifically.  Moreover, Plaintiff has not presented any evidence which would show intentional discrimination.

[4]According Golf Manor Police Department Policy Manual Section 316, an "at risk" missing person includes persons who "are 17 years of age or younger that have run away from or are otherwise missing from the care, custody and control of the juvenile's parent, guardian or other person having responsibility for the care of the minors."   (Doc. 8-1, PAGEID 243).
.

amend. XIV, § 1.

However, as the Supreme Court has explained, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989). In general, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id*. at 197. There are three recognized exceptions to this general rule: (1) the state-created danger exception; (2) the special relationship exception; or (3) the shocks the conscience exception. *S.A. by & through W.A. v. Bd. of Educ. of Perry Cnty., Kentucky*, 692 F. Supp. 3d 712, 725 (E.D. Ky. 2023) (citing *Meyers v. Cincinnati Bd. of Educ.*, 343 F. Supp. 3d 714, 723-26 (S.D. Ohio 2018), *aff'd*, 983 F.3d 873 (6th Cir. 2020)). Plaintiff maintains that the state-created danger exception applies in this case.

> To prevail on a claim for state-created danger, Plaintiff must show:
>
> (1) an affirmative act of the state that created or increased their risk of exposure to a third party's violent act;
>
> (2) a special danger to which the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and
>
> (3) that the state knew or should have known its affirmative act specifically endangered the plaintiff.

*Lipman v. Budish*, 974 F.3d 726, 744 (6th Cir. 2020) (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)). "The ultimate question in determining whether an affirmative state action increased danger to an individual is whether the individual was safer before the state action than after it." *Stiles ex rel. D.S. v. Grainger Cnty., Tenn*.,

819 F.3d 834, 854 (6th Cir. 2016) (citing *Jasinski v. Tyler*, 729 F.3d 531, 539 (6th Cir. 2013)).

Here, Plaintiff has not shown that an affirmative act by Officer Recker created or increased any risk of danger for Aurora. Instead, Plaintiff points to Officer Recker's failure to properly follow Ohio Revised Code § 2901.30 and Golf Manor Police Department Policy Manual Section 316. However, failing to enforce the law or a policy "are plainly omissions rather than affirmative acts." *Stiles*, 819 F.3d at 855. Even if Officer Recker was negligent in handling the missing person report, injury caused by negligence does not constitute a "deprivation" of any constitutionally protected interest. *Lewellen v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 34 F.3d 345, 348 (6th Cir. 1994). Moreover, as another district court has summarized: "police officers do not commit affirmative acts by failing to do enough to prevent private actors from harming other people—even if those private actors are known threats—as long as the officers' actions do not increase the risks already posed by the private actors." *Franz v. Oxford Cmty. Sch. Dist.*, No. 21-CV-12871, 2023 WL 3431223, at *5 (E.D. Mich. May 12, 2023) (collecting cases). Plaintiff has not explained how the actions of Officer Recker exposed Aurora to any danger to which she was not already exposed. As such, Plaintiff cannot show that a constitutional violation occurred in this case. Therefore, Defendant Recker is entitled to qualified immunity. To the extent that Defendants seek summary judgment on this issue, Defendants' Motion for Summary Judgment is GRANTED.

B. **Municipal liability**

Under *Monell v. Department of Social Services*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is

when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("Respondent superior or vicarious liability will not attach under § 1983.").

To establish municipal liability, a plaintiff generally must show: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Here, Plaintiff's municipal liability claim is based on her allegation that the Village of Golf Manor failed to ensure officers were properly instructed and trained on the investigation of missing children.

However, the lack of any constitutional deprivation by Officer Recker precludes a finding of municipal liability against Golf Manor. *See Bukowski v. City of Akron*, 326 F.3d 702, 713 (6th Cir. 2003) (citing *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000) (noting that the "conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well")); *see also Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation.").

Accordingly, Defendants' Motion for Summary Judgment is GRANTED to the extent that it seeks summary judgment on Plaintiff's claim for municipal liability based on a failure to train employees.

C. **Statutory immunity**

Under Ohio law, political subdivisions are generally immune from liability under the Political Subdivision Tort Liability Act "for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). The provision or nonprovision of police and emergency services qualifies as a "governmental function." Ohio Rev. Code § 2744.01(C)(2). Plaintiff's asserted injury stems from the performance of this governmental function. While there are specific exceptions to this broad grant of immunity, *see* Ohio Rev. Code § 2744.02(B), Plaintiff does not argue that any of these exceptions apply here.[5] Therefore, the Village of Golf Manor is entitled to statutory immunity from Plaintiff's state law claims for wrongful death and intentional infliction of emotional distress.

In addition, Ohio Revised Code § 2744.03(A)(6) provides immunity from suit to certain state employees when their activities concern governmental or proprietary functions, except where they act with a "malicious purpose, in bad faith, or in a wanton or reckless manner." *Jones v. City of Cincinnati*, 736 F.3d 688, 697 (6th Cir. 2012) (quoting Ohio Rev. Code § 2744.03(A)(6)(b)). Plaintiff has not claimed that Officer Recker acted with a "malicious purpose, in bad faith, or in a wanton or reckless manner." Therefore, Officer Recker is entitled to statutory immunity from Plaintiff's state law claims for wrongful

---

[5]In fact, Plaintiff did not respond to Defendant's Motion for Summary Judgment regarding her state law claims for wrongful death and intentional infliction of emotional distress. The failure to respond could be considered as an abandonment of those claims. *See Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (affirming finding that party's failure to properly respond to the arguments raised in a motion for summary judgment constituted an abandonment of those claims).

death and intentional infliction of emotional distress.

Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's claims for wrongful death and intentional infliction of emotional distress.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (Doc. 10) is **GRANTED**.  Because no further matters remain pending before this Court, this matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

>       /s/ Michael R. Barrett
> Michael R. Barrett
> United States District Judge